**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

RECEIVED
2005 SEP 28 P 4: 18
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| CURTIS DUNCAN, D.B.A. C&J ASSOCIATES PEST CONTROL, | ) |
| | ) CIVIL ACTION NUMBER |
| PLAINTIFF, | ) |
| VS. | ) |
| RAYBURN HORNSBY, ET AL., | ) CV 05-0557-A |
| DEFENDANTS, | ) |

**AFFIDAVIT – SUPPORTING MOTION TO DISMISS AND STRIKE DEFENDANTS AND THIER ATTORNEYS FRAUDULENT SUBMISSION OF REPORT OF PARTIES PLANNING MEETING**

Comes now Plaintiff Curtis Duncan, C&J Associates, being first duly sworn, deposes and says:

**I**

I, Curtis Duncan, am the plaintiff in the above-entitled action.

**II**

I have recently discovered that the Defendants' Attorneys Jeffrey Long and Harry Lyles have intentionally, knowingly and willfully submitted to the Court on September 7, 2005 a fraudulent report of the true results of the parties' planning meeting, to falsely and deceptively influence the Court of the true nature and basic issues of the case. Mr. Long and Mr. Lyles have fraudulently induced the Court to make a Scheduling order based on false information pertaining to the scheduling of this case. Their Report of Parties Planning meeting contains wholly fraudulent, false and sham matter as follows: First and most

importantly, Mr. Long and Mr. Lyles submitted this document to the Court without my approval or signature and fraudulently typed my name on this document without my permission or knowledge. This entire document does not reflect the true discussions of the Court ordered Parties' Scheduling Meeting, which took place on September 6, 2005 at the State of Alabama Transportation Department (ALDOT). Mr. Long and Mr. Lyles both told me at the Scheduling Meeting that my original report for the scheduling of the case submitted to the Court on September 1, 2005 was fine, except for three line items. See Copy of Plaintiff Original Plan For Scheduling of Meeting (Exhibit 1). 3b. They only wanted to change the completion for discovery date from November 18, 2005 to February 15, 2006. 4c. They requested that all dispositive motions to be filed by February 15, 2006. And, 4e. They wanted the final pretrial conference be held on May 8, 2006. At this point, both parties agreed that these dates would be the final dates and would be submitted to the Court as agreed. Mr. Long and Mr. Lyles both volunteered to have the final draft typed and would e-mail me a copy for my approval and my signature. Mr. Long and Mr. Lyles intentionally, knowingly and willfully did not give me a copy of this final draft of this report before fraudulently submitting it to the Court on September 7, 2005. Plaintiff did not discover Mr. Long and Mr. Lyles fraudulent act until September 22, 2005 after inquiring why I had not received my copy of the September 6, 2005 Parties' Scheduling Meeting. Plaintiff went by Mr. Long's office at the Attorney General Office on September 22, 2005, and asked him for a copy of the report; he deceivingly said to plaintiff that he did not have a copy of the report. Mr. Long then stated that Judge Boyd had finalized the scheduling order and that would be the schedule the parties would have to follow. Plaintiff then stated that I need a copy of the report for my records and that I never received an e-mail or copy from them as promised. Mr. Long then told me to contact Mr. Lyles at ALDOT

and try to get a copy of the report from him. Mr. Long then made the comment "Judge Boyd sure was grilling you during the Status Conference" and that he did not know why Mr. Lyles had not submitted his Motion for Summary Judgment and Affidavits for his clients at Transportation. Plaintiff then went to Mr. Lyle's office at Transportation but he was not in. Plaintiff left message about needing a copy of the report. Mr. Lyles called me by phone and deceivingly apologized for not e-mailing me a copy of the report. Mr. Lyles said he could e-mail a copy or leave a copy at the front reception desk. Plaintiff informed Mr. Lyles that he would pick up a copy of the report at the front reception desk. After picking up the copy on September 22 evening, Plaintiff immediately opened the envelope and discovered that Mr. Long and Mr. Lyles had fraudulently submitted to the Court a report that did not reflect the true discussions of the Parties' Scheduling Meeting. See Copy of Defendants Fraudulent Report Of Parties (Exhibit 2). The report did not reflect anything that we had discussed. Mr. Long and Mr. Lyles simply decided to commit fraud by submitting to the Court only what they wanted to be in the report. Mr. Long and Mr. Lyles fraudulent behavior included typing my name to a document without my approval, knowledge or signature.

**III**

The falsity and the sham and scurrilous nature of such portions of Defendants and their Attorneys Fraudulent Submission of Report of Parties to the Court is affirmatively shown by the following facts, independently of the assertion by affiant of their false, scurrilous, and sham nature: Mr. Long and Mr. Lyles intentionally failed to comply with two Court ordered Parties' Scheduling Meetings. The first Court order issued on August 18, 2005 for parties to comply with the requirement in Rule 26(f) of the Federal Rules of Civil Procedures for their conference "to consider the nature and basis

of their claims and defenses and the possibilities for prompt settlement or resolution of the case, to make or arrange for disclosures required by Rule 26(a)(1) and develop a proposed discovery plan". The Court record reflect that Mr. Long was busy assisting his clients Mr. Isaac Kervin and Mrs. Pat Antle prepare a fraudulent Motion for Summary Judgment and Affidavits, which were filed on August 31, 2005. Mr. Long and Mr. Lyles intentionally failed to meet with Plaintiff concerning the scheduling of this case as ordered by the Court. Plaintiff had no choice but to respond responsibly to Court order by turning in Report Plan For Scheduling of Case, which was due on September 1, 2005. My first conversation with Mr. Long and Mr. Lyles was on September 5, 2005, four days after the Court's deadline. Mr. Long immediately demanded that I meet with them without inquiring what my business schedule entailed. I informed Mr. Long that I had turned in what the Court had ordered of me. Mr. Long then stated that we needed to meet first before turning in the Report of Parties. I then replied he should have communicated with me before the deadline. We then scheduled to meet at Mr. Lyle's office on September 6, 2005. The Court issued a second Scheduling Order before we meet on September 6, 2005. During our brief meeting, Mr. Long and Mr. Lyles refused to comply with the Court order and Rule 26(f) "to consider the nature and basis of their claims and defenses and the possibilities for prompt settlement or resolution of the case." At the September 6, 2005 meeting in Mr. Lyle's office, Plaintiff specifically questioned Mr. Long on the validity of his client's affidavits of Mr. Kervin and Mrs. Antle and their Motion for Summary Judgment. I informed Mr. Long that their affidavits and Motion for Summary Judgment contradicted the language of the Bid Solicitation 03-X-2130153 for which I have filed my lawsuit. See Copy of Bid Solicitation 03-X-2130153 (Exhibit 3). I then proceeded to show Mr. Long and Mr. Lyles'

specific claims from my lawsuit, which correlated with the language of the Bid Solicitation 03-X-2130153 and how Mr. Kervin and Mrs. Antle affidavits contradicted the language of a Bid Solicitation 03-X-2130153 written by them and the facts of case. See Copy of Affidavit of Isaac Kervin (Exhibit 4).

First example, on page 2, fifth sentence of the affidavit, Mr. Kervin states that Mr. Stan Carlton rejected the bid by C&J Associates because the Outpost system offered by C&J Associates was not the specified Sentricon system required in the bid. This statement is factual false on it face and as well as in it content because on page 8 of the Bid Solicitation 03-X-2130153 third paragraph, third sentence states any equivalent product aimed at colony elimination.

Second example, on page 2, fifth sentence of the affidavit, Mr. Kervin states that Mr. Stan Carlton rejected the bid by C&J Associates because the Outpost system offered by C&J Associates. . . . because the primary active ingredient listed in the Outpost system is listed by the EPA for environmental toxicity. The second part of the sentence is factually false on it face as well as in it content because the labels for Sentricon and Outpost reads the same concerning the EPA listing for both products concerning environmental toxicity. See Copy of Labels for Sentricon (Exhibit 5) and Outpost (Exhibit 6).

Third example, on page 2, sixth sentence of the affidavit states that the bid was also rejected because C&J Associates failed to provide documentation of the required damage protection warranty. This statement is factually false on it face as well as in it content because no where in the Bid Solicitation 03-X-2130153 does it mention that the damage protection warranty was required to be submitted with the bid. In addition, at no time during the evaluation of the bid, did personnel request C&J to submit a warranty.

Fourth example, on page 2 of the affidavit first paragraph, the first three sentences states that on May 19, 2003, Ms. Antle re-bid the contract and changed the pricing structure to match industry standards for pricing of this commodity. At this time, DOT changed the specification to "Sentricon Only" and added a specification requiring a "damage replacement guarantee". This bid was assigned the number of 03-X-2132146. These three sentences directly contradict material facts of Mr. Kervin earlier statements in his affidavit. These three sentences specifically contradicts the aforementioned First example on page 2, fifth sentence of the affidavit and third example on page 2, sixth sentence of the affidavit. Mr. Long stated, "I told them to look over everything carefully before making a sworn statement". Plaintiff then asked Mr. Long how could your clients make sworn statements that contradict material facts, in this case, the very bid solicitation they wrote. Mr. Long then sat back in his chair and said, "that's why they hired me". Plaintiff then questioned Mr. Long why he did not submit a copy of Bid Solicitation 03-X-2130153 with his Motion for Summary Judgment, Mr. Long stated " it is your responsibility to turn in a copy of Bid Solicitation 03-X-2130153". Plaintiff then asked Mr. Long what was the purpose of Judge Boyd issuing a court order for parties to discuss the nature and basis of their claims and defenses and the possibilities for prompt settlement. Mr. Long laughed and said, "my clients would kill if we talked about settlement". Mr. Lyles remained virtually quiet and had very few, if any, comments during this meeting. Plaintiff then stated to Mr. Long and Mr. Lyles this meeting is a waste of taxpayers' money, the Court's time and Plaintiff time because Mr. Long and Mr. Lyles were not really participating in the meeting. Mr. Long and Mr. Lyles have a ministerial duty to make reasonable inquiry into factual basis concerning this suit; they cannot merely rely on their clients' statements, without conducting any independent factual investigation; such an investigation would have quickly revealed the lack of merit of their

defense. See Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252 (11th Cir. 1996). See Childs v. State Farm Mut. Auto. Ins. Co., 29 F.3d 1018 (5th cir. 1994). See Christian v. Mattel, Inc., 286 F.3d 1118, 1128-1129 (9th cir .2002). Retired Chicago Police Ass'n v. Firemen's Annuity & Benefit Fund, 145 F. 3d 929, 934-935 (7th Cir. 1998). See Fonar Corp. v. Magnetic Resonance Plus, Inc., 114 3d 355, 358-359 (2d. Cir. 1997). See McLeod, Alexander, Powell & Apffel, P.C. v. Quarles, 894 F. 2d 1482 (5th Cir. 1990).

It is apparent that Mr. Long and Mr. Lyles are conspiring with their clients by continuing to assist them in submitting fraudulently documents and statements to the Court, to induce the Court to make rulings on false information and statements. During the scheduling conference meeting on September 8, 2005 Judge Boyd questioned Mr. Long why was the completion for discovery date of June 15, 2006 set so late. Mr. Long deceptively told Judge Boyd that he set that date for Plaintiff benefit. The Court record will show that Plaintiff corrected Mr. Long, because Plaintiff actually had recommended November 18, 2005 in Parties Planning Meeting on September 6, 2005.

**IV**

The matter referred to above is fraudulent, criminal, scurrilous and a sham and offensive to affiant and to the Court. Mr. Long and Mr. Lyles have fraudulently induced the Court to make an order based on false information, and should be stricken by the Court. Mr. Long and Mr. Lyles' egregious conduct must be sanctioned by the Court in accordance with Rule 11, 16, 37, 56

of the Federal Rules of Civil Procedures. Plaintiff experienced the same type of egregious behavior from the Defendants during the entire bid process.

Curtis Duncan

Sworn to and subscribed before me on the 28th day of September 2005.

Notary Public
My Commission Expires: July 9, 2007

Respectfully submitted,

Curtis Duncan
Plaintiff

C&J Associates Pest Control
P.O. Box 8186
Montgomery, Alabama 36110
Phone 334-201-5203
cj_one@msn.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2005, a copy of the foregoing was mailed first class, postage pre-paid, to:

Jeffery Long
Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130
Phone 334-242-7555
Fax 334-242-2433

Henry Lyles
State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama 36110
Phone 334-242-6350
Fax 334-264-4359

Carter Duncan