IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| C&J ASSOCIATES PEST CONTROL, *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | CASE NO. 2:05-cv-557-WHA |
| ) | |
| RAYBURN HORNSBY, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### DEFENDANTS' MEMORANDUM BRIEF IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Rayburn Hornsby, Johnny Harris, and Stan Carlton (hereinafter "the ALDOT Defendants"), only, by and through their undersigned counsel, and file the following Memorandum Brief in Support of their Motion for Summary Judgment, filed contemporaneously herewith, and show unto the Court as follows:

### FACTUAL BACKGROUND

For the purpose of this memorandum brief, and the recitation of any facts in this memorandum brief, Defendants Hornsby, Harris, and Carlton incorporate, by reference, the previously filed Affidavit of Isaac Kervin and the attachments thereto. Said affidavit was electronically filed on August 31, 2005, and is noted as "Document 13" in the Court file.

On January 29, 2003, the State Purchasing Division of the Department of Finance received a requisition for termite treatment for an Alabama Department of Transportation (hereinafter referred to as "ALDOT") facility. The requisition was assigned to Defendant Pat Antle, who is employed by the State Purchasing Division as a "buyer." (See Affidavit of Isaac Kervin, Doc. No. 13, at 1; see also Defendants' Evidentiary Materials (filed contemporaneously

herewith) ALDOT Exhibit 14, Affidavit of Stan Carlton, at 1-2, as to Defendant Carlton's responsibilities as they pertain to requisitions.)

After receiving the requisition, Antle drafted an Invitation to Bid ("ITB") and forwarded it to the Department of Transportation for approval. ITB No. 03-x-2130153 was approved and mailed to vendors on March 13, 2003. (See Doc. No. 13 at 2 and ALDOT Exhibit 2, ITB No. 2130153.) The ITB reflected ALDOT's determination that the selected vendor utilize "Hexaflumuron (or approved equal)." (See ALDOT Exhibit 2 at 7)[1].

Bids offered in response to ITB No. 2130153 were opened on March 27, 2003. (See Doc. No. 13 at 2 and ALDOT Exhibit 14 at 2.)

After reviewing the bids, Defendant Carlton rejected the bid submitted by C& J Associates for two reasons: First, C&J failed to provide documentation of the required damage protection warranty. Secondly, the Outpost product utilized by C & J failed to meet the requirement that the bidder utilize "Hexaflumuron (or approved equal)"[2].

The materials submitted by Carlton were apparently utilized by Kervin in his decision not to award C & J Associates a contract to provide termite treatment to certain Department of Corrections facilities. Carlton's materials were reviewed by Kervin, but Carlton was not involved in the decision regarding the award of the contract. (Doc. No. 13 at 4-6.)

Defendant Antle first awarded the contract to Cook's Pest Control but then realized that the pricing had been bid incorrectly by Cook's as well as the remaining bidder, Terminix. (See Doc. No. 13 at 2 and ALDOT Exhibit 14 at 2.) Accordingly, Defendant Antle re-bid the contract

---

[1] "Hexaflumuron" is the active ingredient of Sentricon which is manufactured by Dow AgroSciences. (See ALDOT Exhibit 14 at 12.)

[2] It is undisputed that the active ingredient of "Outpost" is Diflubenzuron as opposed to the Hexaflumuron contained in Sentricon. (See ALDOT Exhibit 14 at 12.)

2

and changed the pricing structure match industry standards for pricing of pest control services. (Doc. No. 13 at 2.)

Prior to the issuance of the new ITB, Carlton reviewed available information regarding available termidicides. As part of this review, Carlton read a paper from the University of Florida, a paper from the University of Kentucky, product literature from Dow AgroSciences, and environmental evaluations listed at www.scorecard.org. Additionally Carlton consulted his notes from a publication by the Alabama Examiners of Public Accounts. As a result of his research, Carlton rewrote the specifications of the proposed ITB. (ALDOT Exhibit 14 at 2-3; Doc. No. 13 at 2.) The new specifications provided for "Sentricon only" and included a specification requiring a "damage replacement guarantee." (Doc. No. 13 at 2.)

The new ITB was assigned the number 2132146 (Doc. No. 13, at 2; ALDOT Exhibit 14 at 1.) Bids submitted in response to ITB No. 2132146 were opened publicly on June 5, 2003. Rather than submit a bid, C & J Associates chose to submit a "Bid Protest" (See Doc. No. 13 at 4 and 27; ALDOT Exhibit 8.)

On June 6, 2003, the bid package was sent to ALDOT for evaluation and recommendation. On June 11, 2003, ALDOT (Carlton) returned the bid package to State Purchasing. ALDOT recommended that the contract be awarded to Terminix of Huntsville. On June 12, 2003, the contract for pest control services for ALDOT was awarded to Terminix. (See Doc No. 13 at 3-5; ALDOT Exhibit 9, Bid submitted by Terminix.)

### C & J ASSOCIATES—THE ENTITY

This action is filed in the name of Curtis Duncan and the entity C & J. Associates. Duncan, when questioned by the Court, advised the Court that C & J Associates is a sole proprietorship.

Deposed in this case were Mr. Duncan and his wife Janice Duncan. Mrs. Duncan testified that the business was started in 1992 and that its name, since inception, has been C. & J. Associates. (ALDOT Exhibit 12; Deposition of Janice Duncan, at 102.) Mrs. Duncan also testified that "C. & J. Associates" stands for Curtis and Janice Associates. (ALDOT Exhibit 12 at 101.)

From 1992 until 2002, Mrs. Duncan served as the Chief Accountant of C & J Associates. Her duties included the preparation of financial statements and reports. (See ALDOT Exhibit 3 at 4.) Since its inception, according to the Duncans, C & J has been a sole proprietorship. To the best of Mrs. Duncan's knowledge, she never prepared any documents asserting that C & J was a partnership or a woman-owned minority business. (See ALDOT Exhibit 12 at 21.)

According to Mrs. Duncan, she became vice-president of C & J Associates in March 2003 when her husband asked her to execute a document as vice-president. (ALDOT Exhibit 12 at 25-26.) At some point subsequent to March 2003, Mrs. Duncan ceased to be vice-president, but she is not sure exactly when. (ALDOT Exhibit 12 at 31.) Since January 2006, Mrs. Duncan has performed various roles for C & J. (ALDOT Exhibit 12 at 31-38.)

A number of documents contradict the testimony of Mrs. Duncan:

As noted above, C & J was created in 1992. In 1993 information was filed with the Department of Finance indicating that C & J Associates was a partnership owned by a minority woman. (See ALDOT Exhibit 1.)

In 1997, some six years prior to the document purportedly signaling Mrs. Duncan's ascension to the office of vice-president, C & J Associates responded to ITB No. 98-x-2060676. (See ALDOT Exhibit 11.) The submitted document bears the signature of "Curtis Duncan,

4

President." (ALDOT Exhibit 11 at 3.) That same document, however, describes a different entity than that described by Mrs. Duncan.

The bidder's questionnaire (ALDOT Exhibit 11 at 12) indicates that C & J Associates was a partnership that had been in business for six years. The partners in C & J were listed as Curtis Duncan and Janice Richardson, who were president and vice-president, respectively. The submission also included proof of insurance (ALDOT Exhibit 11 at 25-29.) The proof of insurance includes a supplemental declaration page (ALDOT Exhibit 11 at 27.) In the section requesting a business description and location of the premises, the business is described as a "Partnership." *Id.*

## **ARGUMENT AND SUPPORTING AUTHORITY**

1.  <u>Curtis Duncan lacks standing to represent C & J Associates.</u>

In *Turner v. American Bar Ass'n*., 407 F.Supp. 451, 476 (N.D.Ind.1975), *aff'd. sub nom. Taylor v. Montgomery*, 539 F.2d 715 (7th Cir.1976), the Court observed, in discussing 28 U.S.C. § 1654 (permitting individuals to proceed pro se in federal courts):

> "Corporations and partnerships, both of which are fictional legal persons, obviously cannot appear for themselves personally. With regard to these two types of business associations, the long standing and consistent court interpretation of § 1654 is that they must be represented by licensed counsel."

In *S. Stern & Company v. United States*, 331 F.2d 310, 51 C.C.P.A. 15 (1963), the Court of Customs and Patent Appeals held that 28 U.S.C.A. § 1654 would not allow a lay partner in a partnership to represent the partnership in a judicial proceeding. Likewise, there is a long line of cases starting with *Osborn v. Bank of United States*, 9 Wheat. (22 U.S. 738), 6 L.Ed. 204, and continuing through *Commercial & Railroad Bank of Vicksburg v. Slocomb*, 14 Pet. (39 U.S. 60), <u>10 L.Ed. 354 (1840)</u>; *Nightingale v. Oregon Central Railway Company*, 18 Fed.Cas. No. 10, 264, p. 239; *Brandstein v. White Lamps*, 20 F.Supp. 369 (S.D.N.Y., 1937); *MacNeil v. Hearst*

5

*Corp.*, 160 F.Supp. 157 (Del. 1958); and *Flora Construction Company v. Fireman's Fund Insurance Company*, 307 F.2d 413 (10th Cir. 1962); which have held that under 28 U.S.C.A. § 1654 and its predecessor statutes a corporation may only be represented by licensed counsel. Several of these cases, particularly *Nightingale*, *Hearst*, and *White Lamps*, have emphasized the importance of the centuries-old concept of a court having a lawyer before it who has been qualified to practice and who is subject to the court's control.

Corporations and partnerships, by their very nature, are unable to represent themselves, and the consistent interpretation of § 1654 is that the only proper representative of a corporation or a partnership is a licensed attorney, not an unlicensed layman, regardless of how close his association with the partnership or corporation. The general rule applies even where the person seeking to represent the corporation is its president and major stockholder. *Palazzo v. Gulf Oil Corp.*, 764 F2d 1381 (11th Cir. 1985).

In the case at bar, the evidence shows that, notwithstanding the representations of Mr. Duncan, C & J Associates began its existence as a partnership, the partners being Curtis Duncan and Janice Richardson.[3] Shortly after its inception, someone mysteriously reported its status to the Department of Finance as a "partnership" owned by a minority female and having two employees. (See ALDOT Exhibit 1.) At some subsequent point in time Curtis Duncan began calling the business a sole proprietorship. This transformation occurred despite the entity engaging in the same business, retaining the same name, and having the same officers (see ALDOT Exhibit 2) as the prior business.

ALDOT contends that Mr. Duncan should be disqualified from representing C. & J. Associates.

---

[3] See ALDOT Exhibit 12, Deposition of Janice Duncan, at 101-103: Business named C & J Associates in 1992, prior to their marriage in 1999.

6

2.  Duncan's Claims under 42 U.S.C. 1983.

In light of the facts of this particular case, Plaintiffs' Complaint (Doc. No. 1) fails to state at claim under 42 U.S.C. 1983. At issue would be whether or not Duncan has a constitutionally protected property interest in the award of the subject contract sufficient to invoke constitutional protection. *In Board of Regents v. Roth*, 409 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed. 2d 548 (1972), Justice Stewart noted, at 2709:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it…..
>
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law….

Following this line of reasoning, the Eleventh Circuit has held that a competitive bid law's provision that contracts be awarded to the lowest responsible bidder is sufficient to create an entitlement. *Pataula Electric Membership Corporation v. Whitworth,* 951 F.2d 1238 (11th Cir. 1992). Citing regulatory and statutory language very similar to that contained in Alabama's Competitive Bid Law, the *Pataula* Court wrote:

> "A disappointed bidder may have a constitutionally protected property interest in the award of a contract under 42 USCA 1983 (1981) if that interest is acknowledged by 'existing rules or understandings that stem from an independent source such as state law.' … The directive contained in the Manual represents a rule or understanding sufficient to create an entitlement: 'contracts or open-market purchases will in all cases be awarded to the lowest responsible bidder…'" (Citations omitted.)

*Pataula*, 951 F.2d at 1242. The Court also cited a Georgia state law case for the proposition that the lowest responsible bidder's property interest was defined by the competitive bidding procedures promulgated by the State Board of Education.[4] Alabama law, however, prevents

---

[4] Defendants do not acknowledge that the Plaintiff was the "lowest responsible bidder."

7

Plaintiffs in this case from having the "a legitimate claim of entitlement" contemplated by Justice Stewart and the Eleventh Circuit.

ALA.CODE § 36-1-11 (1975) provides:

> "All persons who are regularly employed by the state and whose pay is seventy-five thousand dollars ($75,000) or less exclusive of benefits shall be permitted to also engage in employment in the private sector if the employment is not specifically prohibited by statute, and if there is no conflict with the state job of the state employee. However, no employee shall engage in employment in the private sector during their scheduled working hours. ***The entity that employed the state employee shall no do business with or be employed by the department that employs the state employee***."

(Emphasis added.)

In the case at bar, the undisputed evidence reflects that an employee of the Plaintiff entity, Janice Duncan, also works for the Alabama Department of Transportation. (ALDOT Exhibit 3 at 11; ALDOT Exhibit 12 at 21, 25-26, 31-38, 101, 102). Mrs. Duncan's employment with ALDOT, by law, precluded C & J Associates from doing business with the Department. Accordingly, Plaintiff(s) had no "reasonable expectation" of being awarded contracts with ALDOT through the Competitive Bid Law.[5] Duncan lacks any constitutionally protected property interest in the award of the subject contract sufficient to invoke constitutional protection. The lack of such property interest is fatal to Duncan's 1983 claim.

3.  Plaintiffs fail to state a claim under 42 USC 1981.

Section 1981 reads:

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, liens, and exactions of every kind, and to no other.."

---

[5] As a matter of public policy, all men are charged with knowledge of the law pertaining to their transactions. *Barber v. Barber*, 684 So.2d 150(Ala.Civ.App). *Pro se* litigants are subject to laws and the rules of court. *Watkin v. Payless Shoe Source, Inc.*, 174 F.R.D. 113 (M.D. Fla. 1997).

A claim alleging a deprivation of one or more rights enumerated under section 1981 can be based only upon intentional discrimination. *Gen. Bldg. Contractors Ass'n v Pa.*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed. 2d 835 (1982). Intentional discrimination may be proven either through direct or circumstantial evidence. *EEOC v. Joe's Stone Crab, Inc.* 220 F.3d 1263, 1286 (11th Cir. 2000).

In the case at bar, Plaintiff admits that his evidence thus far consists only of documents in the bid file and that nothing in the bid file indicates that his treatment was based upon his race. (ALDOT Exhibit 13, Deposition of Curtis Duncan, at 44.) He admits that he has no knowledge of Defendant Carlton's state of mind. (Exhibit 13 at 57.) He notes that in his Complaint he "can only allege" and then through discovery and depositions "prove he lied"[6] (ALDOT Exhibit 13 at 57-58.)

Duncan acknowledges that he has never met Defendants Hornsby or Harris. (See ALDOT Exhibit 13 at 40.) He admits that he does not even know the race of Defendant Harris. (ALDOT Exhibit 13 at 41.) It would seem then that Plaintiff's proof of discrimination must be through the use of circumstantial evidence.

In a non-employment setting, the plaintiff must show (1) that he is a member of a protected class; (2) that the allegedly discriminatory conduct concerned one or more of the activities enumerated in the statute, *i.e.*, the making, performance, modification, or termination of contracts, or the enjoyment of all the benefits, privileges, terms, and conditions of the contractual relationship; and (3) that the defendants treated the plaintiff less favorably with regard to the allegedly discriminatory act than other similarly situated persons who were outside the plaintiff's protected class. *Ali v Stetson University*, 340 F. Supp2d 1320 (M.D. Fla.2004);

---

[6] At this point in time the Plaintiff has conducted no discovery. The only depositions taken have been those of Curtis and Janice Duncan.

9

*Benton v. Cousins Props.*, 230 F.Supp 2d 1351, 1369 (N.D. Ga. 2002), *aff'd* 97 Fed. Appx. 904 (11th Cir. 2004).

Once the plaintiff establishes a *prima facie* case, thereby permitting an inference of discrimination, the defendant must then "articulate some legitimate, nondiscriminatory reason" for its action. *Ali*, *supra*. If the defendant does so, the plaintiff, to survive summary judgment, must then present sufficient evidence to create a genuine issue of material fact regarding whether the defendant's reason is merely a pretext for discrimination. *Chapman v. Al Transp.*, 229 F.3d 1012, 1025 (11th Cir.2000). "Because the plaintiff bears the burden of establishing pretext…he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir.1988) (citation omitted). Plaintiff's "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Id.* at 830 (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.1987)).

In the case at bar, Plaintiffs' *prima facie* case fails. For the purpose of this motion, Defendants Carlton, Harris, and Hornsby concede the first and second elements of the *prima facie* case. The third element, however, is problematic for Duncan. To satisfy this element, Duncan must identify a "similarly situated" bidder, one who is similar to Duncan in all relevant respects, outside of his protected class. *Holifield, supra*. Duncan has failed to identify a non-minority bidder who, upon failing to meet the bid requirements, was awarded a contract. Accordingly, Duncan has failed to show a *prima facie* case under 42 U.S.C. 1981.

Even if, however, Duncan had met this burden, the ALDOT Defendants have articulated some legitimate, nondiscriminatory reasons for their action.

Defendants have offered the affidavit of Defendant Stan Carlton (ALDOT Exhibit 14). Carlton acknowledges that he, not Harris or Hornsby, was responsible for drafting the bid specifications of which Duncan complains. (ALDOT Exhibit 14 at 2.) Carlton goes on to note the duties and responsibilities of his position and asserts that his actions in this case were within those duties and responsibilities. (Exhibit 14 at 1.) Carlton details the process by which he determined to draft the specifications and the materials he reviewed in doing so. (ALDOT Exhibit 14 at 2-3.)

Plaintiffs cannot assert a *prima facie* case under 42 USC 1981. Even if they could, the ALDOT Defendants have sufficiently articulated a legitimate, nondiscriminatory reason for their actions. It is now up to Plaintiffs to show that these reasons are pretextual.

4.  <u>Plaintiffs Have Failed to Meet the Particularized Pleading Standard of Rule 9(B) of the Federal Rules of Civil Procedure</u>

In an apparent effort to improve their chances of surviving a Rule 56 motion for summary judgment, Plaintiffs have liberally sprinkled their assertions with contentions that actions of the ALDOT Defendants were fraudulent. Rule 9(b) provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Alabama courts have determined that in order to satisfy the requirement of "particularity" the averment must include time, place, contents or substance of misrepresentation, facts misrepresented, and an identification of the material obtained through said misrepresentation. *Applin v. Consumers Life Insurance Co.*, 623 So.2d 1094 (Ala.1993).

The United States District Court for the Middle District of Alabama has considered the requirements of Rule 9(b) in *McAllister Towing & Transport. Co, Inc v. Thorn Diesel*, 131 F.Supp 2d 1296 (M.D. Ala. 2001), where Judge Albritton wrote:

> This rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir.1988). Further, "Rule 9(b) must be read in conjunction with Rule 8(a) [of the Federal Rules of Civil Procedure], which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997) (quoting *O'Brien v. National Property Analysts Partners*, 719 F.Supp. 222, 225 (S.D.N.Y.1989)). Rule 9(b) may be satisfied if the complaint sets forth (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."

*McAllister*, 131 F.Supp. 2d at 1300-1301.

A review of Plaintiffs' Complaint (Doc. No. 1) against the four requirements enumerated by Judge Albritton reveals that Duncan falls woefully short or the specificity required by the Federal Rules. Repetition does not equal specificity.

5.  <u>The Defendants are Entitled to the Defense of Qualified Immunity</u>

When a government officer is sued in his individual capacity for money damages based on alleged civil rights violations, he may posit an affirmative defense of qualified immunity. See *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 994 (11th Cir.1995). The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). As such, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear

of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002) (citations omitted).

"[I]n order to receive qualified immunity, the public actor must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir.2004). In assessing whether an official was engaged in a discretionary function, courts consider whether his acts were of a type that fell within his job responsibilities. See *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir.2004). Of critical importance to this inquiry is "whether the government employee was (a) pursuing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.*

This criterion is clearly satisfied here. Carlton's affidavit (ALDOT Exhibit 14) reflects that his actions were taken pursuant to the job description included with the affidavit. Harris and Hornsby forwarded Carlton requisitions as contemplated by Carlton's job description, and Carlton took the actions, with regard to the requisitions and the subsequent ITBs that are clearly enumerated in his job description. The described functions are clearly discretionary functions for qualified immunity purposes. There can be no legitimate question that the "discretionary function" element of the qualified immunity test is satisfied here. "Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." *Crosby*, 394 F.3d at 1332. To prevail, the plaintiff must demonstrate that a reasonable jury could find from record evidence that the defendant "violated a clearly established constitutional right" of which a "reasonable government official would have been aware." *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir.2001). *See also Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir.2005) (official performing

discretionary function is ineligible for qualified immunity if evidence in light most favorable to plaintiff shows that official's conduct violated clearly established constitutional right).

In the case at bar, Plaintiffs have failed to meet their burden. The ALDOT Defendants are entitled to the defense of qualified immunity.

## **Conclusion**

For the reasons cited above Defendants Carlton, Harris, and Hornsby are entitled to an Order granting their Motion for Summary Judgment.

> RESPECTFULLY SUBMITTED
> TROY KING
> ATTORNEY GENERAL
>
> s/ Harry A. Lyles
> Jim R. Ippolito, Jr. (IPP001)
> Assistant Attorney General
> Chief Counsel
>
> Harry A. Lyles (LYL001)
> Assistant Attorney General
> Assistant Counsel

**ADDRESS OF COUNSEL:**
State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama  36110
Telephone:  (334) 242-6350
Facsimile:  (334) 264-4359

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| C&J ASSOCIATES PEST CONTROL, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) CASE NO. 2:05-cv-557-WHA |
| RAYBURN HORNSBY, *et al.*, | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that, on July 31, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECT system, which will send notification to the following:

Mr. Jeffery H. Long, Esq.
Attorney General's Office
11 South Union St
Montgomery, Alabama  36130
ATTORNEY FOR DEFENDANTS

I also certify that, on this same date, I have served the foregoing on the following by placing copies thereof, addressed to them as indicated below, in United States mail, First Class Postage prepaid:

Mr. Curtis Duncan
Mrs. Janice Duncan
C&J Associates Pest Control
P.O. Box 8186
Montgomery, Alabama  36110
PLAINTIFFS *PRO SE*

s/ Harry A. Lyles
Harry A. Lyles (LYL001)
Assistant Attorney General
Assistant Counsel

**ADDRESS OF COUNSEL:**
State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama  36110
(334) 242-6350 (office)
(334) 264-4359 (facsimile)