## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT FOR ALABAMA

| | | |
|---|---|---|
| **C&J ASSOCIATES PEST CONTROL, ET AL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| | ) | **2:05CV557-WHA-DRB** |
| **v.** | ) | |
| | ) | |
| **RAYBURN HORNSBY, et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Isaac Kervin and Pat Antle, by and through the Honorable Troy King, Attorney General for the State of Alabama, and move this Honorable Court to enter a summary judgment in their favor dismissing the action pursuant to Rule 56 of the Federal Rules of Civil Procedure and for grounds state as follows:

1.    There is no dispute as to any material fact.

2.    Defendants are entitled to qualified immunity.

3.    Defendants are entitled to judgment as a matter of law.

4.    Plaintiff fails to meet the heightened pleading requirements for claims brought under 42 U.S.C. §1983.

5.    Defendants are entitled to summary judgment because Plaintiff has failed to establish a prima facie case of discrimination.

## BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Isaac Kervin and Pat Antle, by and through the Honorable Troy King, Attorney General for the State of Alabama, and file this Brief in Support of Motion for Summary Judgment by stating as follows:

### PLAINTIFF

1)  Curtis Duncan, Owner and President of C&J Associates Pest Control.

### DEFENDANTS

1)  Isaac Kervin, Purchasing Agent, State of Alabama.

2)  Pat Antle, Buyer, State of Alabama.

### PLAINTIFF'S ALLEGATIONS

1.  Count I is a 42 U.S.C. § 1981 claim based on Plaintiff's allegation that he was discriminated against in state contracting.

2.  Count II is a 42 U.S.C. § 1983 claim based on Plaintiff's allegation that the discrimination was "under the color of state law."

3.  Count III alleges Defendants' actions were in violation of, *inter alia*, State of Alabama Competitive Bid Laws.

### UNDISPUTED FACTS[1]

#### A.  Alabama Department of Transportation Bid Process

On January 29, 2003, State Purchasing received Requisition Number 1264823 for termite treatment sought by the Alabama Department of Transportation (ADOT). [Aff. Kervin 1] This requisition was assigned to Pat Antle, buyer. [Aff. Kervin 1] On February

---

[1] Although the process for each bid happened concurrently, the contracts will be taken in turn from the bidding process with the earliest starting date.

24, 2003, Pat Antle drafted an invitation to bid and sent it to ADOT for approval prior to sending it to vendors for bidding. [Aff. Kervin 1, 2] On March 13, 2003, the bid was mailed to vendors. [Aff. Kervin 2] On March 28, 2003, the bid package containing the bids received was forwarded to ADOT with an evaluation and award recommendation in writing. [Aff. Kervin 2] The recommendation was for C&J Associates, but it was rejected by ADOT because the "Outpost" system offered by C&J Associates was not the specified "Sentricon" System. [Aff. Kervin 2; Depo. Duncan 19, 217]

On May 19, 2003, due to an incorrect pricing on the remaining bids, Antle rebid the contract, changing both the pricing structure and clarifying the specification of the product requested to "Sentricon only," and adding a specification requiring a "damage replacement guarantee." [Aff. Kervin 2; Depo. Duncan 21, 25, 134, 135, 136, 146, 147] "Sentricon" does not have a racial criteria for the vendors of its product. [Duncan Depo. 87] The new bid was assigned a new number (03-X-2132146) and the process started over. [Aff. Kervin 2]

On May 22, 2003, C&J Associates sent a letter to Antle asking that the company be awarded several contracts including the original March 13 ADOT bid which was cancelled by the rebid on May 19. [Aff. Kervin 2, 3] On May 30, 2003, Isaac Kervin received a letter from C&J Associates asking State Purchasing to accept other termiticides for the rebid of the ADOT contract, which specified "Sentricon only" as the product requested. [Aff. Kervin 3; Depo. Duncan 61] In the letter, C&J Associates requested Kervin to contact two experts at the Department of Agriculture, Dr. John Block and Mr. Joe Debreaux. [Aff. Kervin 3] Kervin telephoned both experts. [Aff. Kervin 3; Depo. Duncan 29, 30] Debreaux informed Kervin that Outpost and Sentricon have

separate chemical structures, and Block was of the opinion that Outpost was better suited for home use, whereas Sentricon was better suited for commercial use. [Aff. Kervin 3]

On June 1, 2003, Antle and Kervin had a conference with Mr. Walt Weinwurm, a representative of Bayer ES, manufacturer of "Outpost TBR". [Aff. Kervin 3; Depo. Duncan 32, 33]Weinwurm informed Kervin and Antle that he had advised C&J Associates to withdraw his bid because "'Outpost' is not an equivalent to 'Sentricon'." [Aff. Kervin 3] After discussion with these three experts, and some other research, Kervin and Antle decided to accept only "Sentricon" for the rebid of the ADOT contract. [Aff. Kervin 3, Duncan Depo. 46, 47]

On June 4, 2003, C&J Associates sent yet another letter to State Purchasing, this time in protest. [Aff. Kervin 3; Depo. Duncan 143] Also on June 4, 2003, Kervin and Antle had a meeting with Mr. Lee Miller, Chief Legal Counsel for the Department of Finance to discuss the protest. [Aff. Kervin 3] Miller advised them that the State was not violating the State Purchasing Laws by asking for Sentricon as the only acceptable product, because the State could successfully justify the use of "Sentricon" as the only viable product for the intended application, and there were multiple vendors[2/3] who offer this product, thus providing adequate competition for the bid. [Aff. Kervin 3, 4]

On June 5, 2003, the new ADOT bid was opened publicly. [Aff. Kervin 4] C&J Associates submitted a "NO BID." [Aff. Kervin 4; Depo. Duncan 150, 160 ] On June 11, 2003, the bid package was forwarded to ADOT with an evaluation and award recommendation in writing recommending the award be given to Terminix, the low

---

[2] A minimum of two vendors offer the product: Terminix and Cook's.
[3] Curtis Duncan by his freedom of choice has chosen not to use Sentricon. [Depo. Duncan 198, 199, 205]

bidder. [Aff. Kervin 4] On June 12, 2003, the contract for ADOT was awarded to

Terminix. [Aff. Kervin 4; Depo. Duncan 154, 156, 157, 160]

On June 13, 2003, Kervin answered the protest of C&J Associates. [Aff. Kervin

4; Depo. Duncan 144]

### B.  Alabama Department of Corrections Bid Process

On February 20, 2003, State Purchasing initialized Requisition Number 1268367

for termite treatment at the Alabama Department of Corrections – Limestone Facility

(ADOC). [Aff. Kervin 4] Invitations to bid were mailed to registered vendors. [Aff.

Kervin 4] On March 28, 2003, the bids were forwarded to ADOC for evaluation and

award recommendation. [Aff. Kervin 4] On April 15, 2003, ADOC returned bid package

to State Purchasing with an award recommendation for C&J Associates. [Aff. Kervin 4,

5]

On April 17, 2003, C&J Associates was set to receive the award as recommended

by ADOC. [Aff. Kervin 5; Depo. Duncan 24, 25] Before the award had been made

official, Kervin received a phone call from ADOT informing him that C&J Associates

had not met the specifications of the ADOT bid. [Aff. Kervin 5] Because the ADOT bid

contained the same specifications as the ADOC bid, Kervin could not officially award

C&J Associates until ADOT returned their bid package with written justification that

showed C&J Associates' product did not meet the bid specifications. [Aff. Kervin 5] On

April 21, 2003, ADOT sent their bid package with documentation showing C&J

Associates' product did not meet the bid specifications, which were the same as the

specifications bid for the ADOC contract. [Aff. Kervin 5; Depo. Duncan 24, 78]

On April 25, 2003, Antle sent ADOC the bid package for reevaluation because the bid specifications were identical to the ADOT specifications. [Aff. Kervin 5] In this letter, Antle identifies three reasons C&J Associates' product did not meet the bid specifications: [1] The manufacturer of "Outpost" recommended its product to be used with other termite control products, which is outside the bid; [2] "Outpost" does not guarantee the elimination of colonies, per research performed by Pat Antle; [3] The active ingredient in "Outpost" is listed by the EPA for environmental toxicity, and the bid specifically states that any product equal to "Sentricon" must be non-toxic. [Aff. Kervin 5, Ex. H] On May 22, 2003, ADOC sent the bid package back to State Purchasing with a letter of award recommendation for Cook's Pest Control. [Aff. Kervin 5, Ex. I]

On May 22, 2003, Kervin received a letter from C&J Associates, as discussed *supra*. [Aff. Kervin 5] On May 30, 2003, Kervin received another letter from C&J Associates requesting Kervin speak to two experts; as discussed *supra*, Kervin complied with this request.  [Aff. Kervin 5, 6; Depo. Duncan 29, 30, 61] Also as discussed *supra*, Antle and Kervin had a conference with Mr. Walt Weinwurm of Bayer ES, manufacturer of Outpost TBR. [Aff. Kervin 6; Depo. Duncan 32, 33]

On June 4, 2003, C&J Associates sent a letter of protest to State Purchasing. [Aff. Kervin 6; Depo. Duncan 143] On June 11, 2003, a contract was awarded to the lowest bidder who met the specifications, Cook's Pest Control of Madison, Alabama. [Aff. Kervin 6; Depo. Duncan 166] On June 13, 2003, Kervin responded to C&J Associates' protest letter indicating several reasons for rejecting C&J Associates'  bid for failure to meet specifications, including recommendations of experts who had been suggested by C&J Associates in an earlier letter. [Aff. Kervin 6; Depo. Duncan 144]

<u>**DEFENDANTS' EXHIBITS**</u>

Exhibit 1 – Affidavit of Isaac Kervin

Exhibit 2 – Affidavit of Pat Antle

Exhibit 3 – Supplemental Affidavit of Isaac Kervin

Exhibit 4 – Deposition of Curtis Duncan

<u>**ARGUMENT**</u>

## I. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, judgment as a matter of law is due to be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c).

> In such a situation, there can be 'no genuine issue as to any material fact,' since *a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.*

*Roe v. Aware Woman Center for Choice, Inc*., 357 F.3d 1226, 1228 (11th Cir. 2004)(emphasis original)(citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986)). Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); *See also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (describing the responsibilities of the summary judgment movant and

non-movant as dependent upon the locus of the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

## II.    PLAINTIFF'S 42 U.S.C. § 1981 CLAIM IS MERGED INTO HIS 42 U.S.C. § 1983 CLAIM.

The Plaintiff cannot maintain both a Section 1981 claim and a Section 1983 equal protection claim because, when asserted against state actors, the Section 1981 claim "merges" into the Section 1983 claim. *Hamilton v. Montgomery County Bd. of Educ.*, 122 F. Supp. 2d 1273, 1279 (M.D. Ala. 2000); *Shows v. Morgan***,** 40 F.Supp.2d 1345, 1360 (M.D. Ala. 1999). Plaintiff asserts both a Section 1983 and a Section 1981 claim in his complaint. [Complaint ¶ 41-46]

"It is black-letter law that Section 1983 is not itself a source of substantive rights." *GJR Investments v. County of Escambia*, 132 F.3d 1359, 1364 (11th Cir. 1998) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). Here, the Plaintiff asserts a violation of Section 1983 for the alleged deprivation of his Fourteenth Amendment equal protection rights by Defendants. [Plaintiff's Complaint ¶ 44-46]

"[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Independent School District*, 491 U.S. 701, 733, 109 S. Ct. 2702, 2722 (1989); *see also Busby v. City of Orlando*, 931 F.2d 764, 771-72 n.6 (11th Cir. 1991) ("section 1981 can provide no broader remedy against a state actor than section 1983"). Under the clear precedent of the Supreme Court and the Eleventh Circuit, the Plaintiff's Section 1981 claim is "merged" with his Section 1983 claim. *See Jett*, 491

U.S. at 733, 109 S. Ct. at 2722; *Hamilton*, 122 F. Supp. 2d at 1279; *Shows*, 40 F.Supp.2d

at 1360; *Busby*, 931 F.2d at 771-72 n.6. Judgment as a matter of law should therefore be

entered in the Defendants' favor as to the entirety of the Plaintiff's Section 1981 claims.

## III.   QUALIFIED IMMUNITY BARS PLAINTIFF FROM ANY MONEY DAMAGES ASSERTED AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

"The purpose of … qualified immunity is to protect state officials from the burden

of *trial,* not just personal liability, for actions within their discretionary authority."

*Williams v. City of Albany*, 936 F.2d 1256, 1258 (11th Cir. 1991) (emphasis original).

Therefore, the affirmative defense of qualified immunity bars any such damages claims

against the Defendants in their individual capacity. *See, e.g., id.*; *Harlow v. Fitzgerald*,

457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) ("government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known"); *Mitchell v. Forsyth*, 472 U.S. 511, 527,

105 S. Ct. 2806, 2816 ("qualified immunity is in part an entitlement not to be forced to

litigate the consequences of official conduct").

Even if this Court were to agree with the Plaintiff, *arguendo*, that he is entitled to

equitable relief for any alleged violations of his Fourteenth Amendment rights, Defendant

is clearly immune from every claim by the Plaintiff for damages. *See Green v. Brantley*,

941 F.2d 1146, 1151 (11th Cir. 1991) ("[e]xistence of a factual dispute is irrelevant to a

determination of whether, as a matter of law, the Plaintiff has alleged a violation of

clearly established law, thereby defeating a Defendant's claim to qualified immunity").

The distinction between a decision by the Court on the merits and a decision on qualified immunity is noted for the purposes of this argument. "[I]t follows from the recognition that qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct that a claim of immunity is conceptually distinct from the merits of the Plaintiffs claim that his rights have been violated." *Mitchell*, 472 U.S. at 527-29, 105 S. Ct. at 2816-17; *see also Green*, 941 F.2d at 1151-52 ("whether the Defendant official is entitled to qualified immunity on a particular damage claim is also conceptually distinct from the substantive merits" for purposes of collateral review doctrine).

### A.  Qualified Immunity Applies to Defendants Because No Clearly Established Law Proscribes the Actions of Defendants.

Even if Plaintiff stated claims under the Fourteenth Amendment that would otherwise entitle him to relief, Defendants are nevertheless entitled to qualified immunity from such claims. *See Green*, 941 F.2d at 1151. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S. Ct. at 2738. "The *Harlow* decision sets up a bright-line test that is a powerful constraint on causes of action under section 1983." *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir.), cert. denied, 493 U.S. 831, 110 S. Ct. 101 (1989).

To defeat a qualified immunity defense, the Plaintiff bears the burden. *Id.* The Plaintiff must show that the alleged violation by the Defendant was clearly proscribed by law. *Mitchell*, 472 U.S. at 528, 105 S. Ct. at 2816.  "Plaintiff cannot discharge her burden simply by making general, conclusory allegations of some constitutional violation or by

stating broad legal truisms." *Barts*, 865 F.2d at 1190. It is not enough for the Plaintiff to merely allege that his Fourteenth Amendment rights have been violated. Plaintiffs must "prove the existence of a clear, factually-defined, well-recognized right", which should have been known. *Id.* "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640. 107 S. Ct. 3034, 3039 (1987). For qualified immunity not to apply, "the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the Defendant's place, that 'what he is doing' violates federal law." *Id.* "Only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998).

Qualified immunity clearly applies in this case. A State Buyer (Antle) made bid specifications to only include one product, based on her research. [Aff. Kervin 3, Duncan Depo. 46, 47] There is no available precedent that proscribes the specification of a single product[4] for bid, so long as there is ample competition available for that product. Plaintiff can cite no precedent that is "materially similar" to the facts in this case that would have put Defendants on notice that they were violating preexisting, firmly established law by issuing a single product bid. *See id.* The competitive bid law of Alabama states that the awards on competitive bidding "shall be made to the lowest responsible bidder taking into consideration the qualities of the commodities proposed to be supplied, *their conformity with specifications*, the purposes for which required, the terms of delivery,

---

[4] The distinction between "single product" and "sole source" is noted. A "sole source" product is a product that is only available from a "sole source" whereas a "single product" is a specification for only one product, but may be available from several vendors. *See* Ala. Code. § 41-16-57 (b) (1975).

transportation charges, and the dates of delivery." Ala. Code § 41-16-75 (1975) (emphasis added).  Because the specifications called for "Sentricon" and not "Outpost", Plaintiff's bid did not conform with the specifications, as required by law, and therefore not awarding the contracts to him was not a violation of any "clearly established law" and to have awarded the Plaintiff the contract would have violated Alabama law which requires the accepted bid to conform with the required specifications. [Aff. Kervin 2; Depo. Duncan 19, 217]; *See id*. Further, because the product specified was available from more than one vendor and not a "sole source", no justification or documentation is required as would be under Section 41-16-57(b) for a "sole source" product. The court "should think long and hard before stripping Defendants of immunity." *See Ray v. Foltz*, 370  F.3d 1079, 1082 (11th Cir. 2004)(internal citations omitted).

"For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the Defendant's place, that 'what he is doing' violates federal law." *Anderson*, 483 U.S. at 640, 107 S. Ct. at 3039. "Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases." *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000)(internal citations omitted). "For purposes of qualified immunity, the Plaintiff must do more than simply make general, conclusory allegations of some constitutional violation or state broad legal truisms, generalities are just not helpful." *McDaniel v. Woodard*, 886 F.2d 311, 314 (11th Cir. 1989) (internal citations omitted). "Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1277

(11th Cir. 2004). "When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon [by Plaintiff] as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar." *Hudson v. Hall*, 231 F.3d 1289, 1297 (11th Cir. 2000).

B. **Qualified Immunity Applies to Defendants Because Plaintiff Has No Facts Showing that the Acts Taken by the Defendants Could Strip Them of Qualified Immunity.**

There is no cause of action under the Fourteenth Amendment for discrimination unless the Plaintiff establishes an intent to discriminate by Defendant. *See, e.g., Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir. 1998)( "A government actor…cannot violate a Plaintiff's equal protection rights unless the Defendant has the intent to discriminate."); *Parks v. City of Warner Robins, Georgia,* 43 F.3d 609, 616 (11th Cir.1995) ("[P]roof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim."); *Washington v. Davis,* 426 U.S. 229, 239-45, 96 S. Ct. 2040, 2047-50 (same).

To determine qualified immunity, a defendant must first establish that he was acting in his discretionary authority. *Maldonado v. Snead***,** 168 Fed. Appx. 373, 379 (11th Cir. 2006).  Kervin and Antle have shown in their affidavits that they had to make discretionary decisions involving judgment concerning the validity of specifications in the bids, the application of complex competitive bid law to their decisions and make judgments determining whether the Plaintiffs bid met the specifications of bid or not.[5] They had to research and use their judgment whether Plaintiffs product Outpost was the equivalent of the specified product, Sentricon, and they decided it was not.  Clearly all

---

[5] The broadness of the state purchasing authorities' discretion has been discussed in *White v McDonald Tractor Company*, 248 So.2d 121 (Ala. 1971).

these judgments were within their discretionary authority requiring judgment as state purchasers.  Once established, the burden shifts to the Plaintiff to come forward with facts showing that the acts taken by the Defendants would "strip the Defendants of qualified immunity." *Id.* Plaintiff has not met that burden. It is clear that there are no facts that could "strip the Defendants of qualified immunity." *Id.*; *See Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) ("Rather than basing its analysis solely on a general proposition, the magistrate judge should have applied the facts of *this* case")(emphasis added); *Jenkins by Hall v. Talladega City Bd. Of Educ.*, 115 F.3d 821, 827 (11th Cir. 1997) ("officials cannot be required to construe general legal formulations that have not once been applied to a specific set of facts by any binding judicial authority."). Plaintiff can show no actions by Defendant that violated "clearly established law" or even facts that would show Defendant violated some esoteric principle of law. Plaintiff's complaint should  be dismissed.

The United States Supreme Court, in *Crawford-El v. Britton*, stated that, "[w]hen a Plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." 523 U.S. 574, 598, 118 S. Ct. 1584, 1596 (1998). Furthermore, when intent is at issue, "the primary focus is not on any possible animus directed at the Plaintiff; rather, it is more specific, such as an intent to disadvantage all members of a class that includes the Plaintiff ... or to deter public comment on a specific issue of public importance." *Id*. at 592, 118 S. Ct. at 1594 (internal citation omitted). "[A] defense of

qualified immunity may not be rebutted by evidence that the Defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the Defendant's subjective intent is simply irrelevant to the defense." *Id.* at 598, 118 S. Ct. at 1592. Qualified immunity bars the recovery of any money damages against Defendants in their individual capacity if their conduct was objectively reasonable and they would have reached the same decisions regarding the Plaintiff even in the absence of any unlawful discrimination. *Crawford-El*, 523 U.S. at 593, 118 S. Ct. at 1594; *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S. Ct. 568 (1977).

Defendants treated Plaintiff evenhandedly, courteously and without malice; in fact, Defendants greatly indulged Plaintiff's demands and protests. The initial ADOT contract was rebid due to discrepancies in the bids of all bidders. [Aff. Kervin 2; Depo. Duncan 21, 25, 134-36, 146-47] Defendants, at the request of Plaintiff, further researched their decision to use Sentricon only, and confirmed their earlier research. [Aff. Kervin 3; Depo. Duncan 29-30] Even if Plaintiff could show that race was a motivating factor, there is ample evidence that Defendants would have reached the same decision anyway. [Aff. Kervin 3, 4]; *See Crawford-El.*, 523 U.S. 574, 118 S. Ct. 1584; *Mt. Healthy*, 429 U.S. 274, 97 S. Ct. 568. Defendants are entitled to qualified immunity from any damages claims asserted against them in their individual capacities.

### C. Defendants are Entitled to Qualified Immunity From Plaintiff's 42 U.S.C. §1981 Claim as a Matter of Law.[6]

Under Section 1981, to find liability, the discrimination must be purposeful. *Lincoln v. Boar*, 697 F.2d 928, 936 n. 8 (11th Cir. 1993). "The ultimate question in a

---

[6] Although Defendants contend that this claim is merged with the § 1983 claim(see discussion in I), qualified immunity is addressed in this heading.

disparate treatment case is not whether the Plaintiff established a prima facie case or demonstrated pretext, but whether the Defendant intentionally discriminated against the Plaintiff." *Palmer v. Stewart*, 2006 WL 1275850, at *2 (11th Cir. May 10, 2006)(internal quotations omitted). Plaintiff has failed to offer any proof concerning the intent of Defendants. In fact, Plaintiff has openly admitted to the fair and cordial treatment he received from Defendants and how race never was a part of the file or their dealings. [Depo. Duncan 39, 44-45, 87, 89] The Defendants are entitled to qualified immunity regarding the section 1981 claim.

## IV.  THE COMPLAINT FAILS TO SATISFY THE ELEVENTH CIRCUIT'S HEIGHTENED PLEADING STANDARD FOR 42 U.S.C. § 1983 ACTIONS.

"[T]his circuit, along with others, has tightened the application of Rule 8 [of the Federal Rules of Civil Procedure] with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 Plaintiff allege with some specificity the facts which make out its claim." *Id.* "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow*, 457 U.S. at 817-18, 102 S. Ct. at 2738. *GJR* provides a clear example of the Eleventh Circuit's disdain for such haphazard pleading:

> The district court's error in finding an equal protection claim probably stemmed at least in part from the difficulty in deciphering GJR's complaint, which unfortunately is a classic example of what is referred to in this circuit as a "shotgun pleading." The complaint presents scores of allegations regardless of their relevance and incorporates them in their entirety into several counts asserting discrete claims for relief, each of which contains several references to haphazardly described constitutional "rights"... [A]pplication of the heightened pleading standard is one way to deal summarily with pleadings of this kind.

132 F.3d at 1368 (internal citations omitted). Ultimately, the court found the defendants entitled to qualified immunity, reversed the district court's decision, and remanded the case with instructions to dismiss with prejudice all claims for damages against the Defendants. *Id.* at 1370. Considering the analogous complaint of *GJR*, Defendants are entitled to qualified immunity and Plaintiff's complaint should be dismissed as in *GJR*. *Id.*

Plaintiff's complaint is a "shotgun pleading," and should be dismissed because the Eleventh Circuit has "condemned repeatedly" such pleadings. *Maldonado v. Snead*, 168 Fed.Appx. 373, 380 (11th Cir. 2006); *See also GJR Investments*, 132 F.3d at 1369 ("a Plaintiff must not be permitted, through the use of the kind of 'shotgun' pleading tactic evident here, to strip government officials of the protection provided by the official immunity doctrine."). This circuit requires that Plaintiffs meet a "heightened pleading" standard when suing government officials in their individual capacity under Section 1983. *GJR*, 132 F.3d at 1368. Plaintiff's complaint in Count One alleges that "Defendants [sic] actions have violated Plaintiff [sic] Federal Constitutional Right of the 14th Amendment [rights]…" [Complaint ¶ 41]  Count Two of Plaintiff's complaint alleges "this count is brought for damages and other relief under 42 U.S.C. 1983 [sic] for the acts of  the Defendants which were carried out while they was [sic] acting under the color of state law and in violation of Plaintiff [sic] 14th Amendment of The United States Constitution and civil rights." [Complaint ¶ 45] Count Three further alleges that it is brought "for damages and other relief for the acts of Defendants…" [Complaint ¶ 48] None of these counts or allegations amount to a claim, nor do they allege any violation of

Constitutional Rights with enough specificity to overcome the "heightened pleading standards" required in cases involving Section 1983. *See GJR*, 132 F.3d at 1367.

In this case, the factual allegations in the complaint are merely general allegations of legal conclusions and are "inadequate to state a cause of action." *Larry R. George Sales Co. v. Cool Attic Corp.*, 587 F.2d 266, 273 (5th Cir. 1979). Plaintiff's failure to properly plead his claims is further aggravated by the fact that the individually named Defendants assert qualified immunity from his claims. *See GJR Investments*, 132 F.3d at 1369 ("Reading complaints with this level of indulgence [as the lower court did] is particularly troublesome when Defendants raise the issue of qualified immunity.").

"Courts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education." *Id.* It is not the job of Defendants, however, nor of this Court to "serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Id.* As it stands, the complaint falls woefully short of the pleading standards demanded by this circuit in civil rights actions and the Section 1983 claims against Defendant in their individual capacities are due to be dismissed. *See id.*

## V. PLAINTIFF FAILS TO ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION. [7]

A Plaintiff must make a prima facie showing of two elements in order to prevail in a civil rights action under section 1983: "(1) that the act or omission deprived Plaintiff

---

[7] The Defendants incorporate and reassert by reference as if fully set out herein their original Motion for Summary Judgment, Statement of Undisputed Fact and Law (Doc 13). An additional affidavit of Kervin is submitted to swear to and certify the authenticity of the documents submitted in the original Motion for Summary Judgment, so as to address Magistrate Boyd's comment that they could not be weighed as evidence at Document 60, footnote 2.

18

of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." *Walker v. Briley*, 140 F. Supp. 2d 1249, 1256 (N.D. Ala. 2001) (citing *Marshall County Bd. Of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (internal citations omitted)). "[T]raditional race discrimination claims arising under the Fourteenth...Amendment[]..require[s] proof of intentional discrimination.[8]" *Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 (11th Cir. 1999). Furthermore a failure to show intentional discrimination is "fatal" to a section 1983 claim. *Negron v. City of Miami Beach, Florida*, 113 F.3d 1563, 1565 (11th Cir. 1997). "Plaintiffs who make claims...under § 1983 based on equal protection, have been required to allege that some intentional discrimination took place." *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1543 (11th Cir. 1994) (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-66, 97 S. Ct. 555, 563)).

The United States Supreme Court, in *McDonnell Douglas Corp. v. Green*, created a four-part test to establish a prima facie case for racial discrimination. 411 U.S. 792, 802, 93 S. Ct. 1817 (1973). The analysis set forth by the Supreme Court for use in Title VII cases involving claims of intentional discrimination has been adopted by this Court for discrimination cases arising under Section 1983. *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir.1982); *Lee v. Conecuh County Bd. of Educ.*, 634 F.2d 959, 963 (5th Cir.1981);

---

[8] Because of the requirement of intentional discrimination and the facts of this case, intentional discrimination alone will be discussed in this section.

"Under the *McDonnell Douglas* framework, when circumstantial evidence[9] is used, a Plaintiff must first establish a prima facie case of discrimination." *Palmer v. Stewart County School Dist.*, 2006 WL 1275850, at *2 (11th Cir. May 10, 2006)(citing *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. at 1824). The initial burden rests on the Plaintiff to "demonstrate by a preponderance of the evidence a prima facie case of discrimination." *Id.* Plaintiff must demonstrate that he [1] is a member of a minority group, [2] he submitted an application or bid which met the requirements of the available contract, [3] that the application or bid was ultimately rejected, and [4] that the contract was eventually given to an individual who is not a member of a protected class. *Id.* Following this, Defendant must produce evidence demonstrating a legitimate, nondiscriminatory reason for its conduct. *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 949 (11th Cir. 1991). The burden on the Defendant is one of production rather than persuasion. *Id.*

Plaintiff is able to demonstrate that he is a member of a minority group. *Palmer*, 2006 WL 1275850, at *2. Plaintiff, however, fails when he attempts to show how he submitted an application or bid which *met the requirements* of the available contract. *Id.* It is undisputed that Plaintiff's product was not "Sentricon" and that it did not meet the requirements of the available contract. [Aff. Kervin 3; Depo. Duncan 61] It is, therefore, very difficult for Plaintiff to prove that the application or bid was ultimately rejected, and that the contract was eventually given to an individual who is not a member of a protected class. *Palmer*, 2006 WL 1275850, at *2. Plaintiff "no bid" one of the

---

[9] Plaintiff has neither presented, nor alleged any direct evidence in this case.

applications, and because of the "no bid", his application could not have been rejected. [Aff. Kervin 4; Depo. Duncan 150, 160 ]

The first invitation to bid (30-X-2130153) was sent out on March 13, 2003 and was for termite services for DOT. Plaintiff's bid was going to be rejected because he did not meet specifications and in fact, no one was awarded the bid [Depo. Duncan 134] because the pricing had bid incorrectly by the other bidders and so the contract was rebid to change the pricing structure to match industry standards for pricing of this commodity. [Aff. Kervin; Depo. Duncan 25, 134, 135, 136] Thus, the Plaintiff fails to meet his burden to show that his bid met specifications and the contract was given to an individual who is a member of a protected class.

The DOT bid was rebid as Invitation to Bid number 03-X-2132146 and was mailed out on May 19, 2003. The sealed bids were opened on June 5, 2003. The Plaintiff submitted a "No Bid". One June 12, 2003 the contract was awarded to Terminix.

In Bid number 03-X-2132146, referred to as 146 in the Curtis Duncan deposition, he admits he "No Bid" [Depo. Duncan 149, 150] and consequently he does not meet his burden of proof because he can not prove he met the requirement that he submitted an application or bid which met the requirements of the available contract or that it was ultimately rejected. When asked in deposition if he knew whether Terminix in Huntsville, Alabama is a corporation, partnership or what type entity, Mr. Duncan admitted that he did not know. When asked what his evidence of the ethnicity of Terminix, he admitted that he did not have any. [Depo. Duncan, 158, 159]

The third and final contract made the basis of the Plaintiff's complaint is 03-X-2130174 (0174) for the Department of Corrections.  The invitations to bid were sent out March 14, 2003 and the sealed bids were opened on March 28, 2003.  It was determined that Plaintiff's bid did not meet specifications and the bid was awarded to Cook's Pest Control. (Doc. 13, Ex. H)  When asked at deposition, Mr. Duncan stated that it is common knowledge that Mr. Cook owns Cook's Pest Control and that he is a white vendor.  Thus, Plaintiff lacks proof as to discrimination in contract 0174 (the Corrections contract) because he did not submit a qualified bid and common knowledge is not going to be sufficient proof of the ethnicity of the winner, Cook's Pest Control.

Even if Plaintiff were able to prove all of the factors in the intentional discrimination test, Defendants had a reason for making the decision they made. *See Crawford-El*, 523 U.S. at 593, 118 S. Ct. at 1594; *Mt. Healthy City Board*, 429 U.S. 274, 97 S. Ct. 568. Defendants made their decision based on the bids that met the "Sentricon only" specification. Because Plaintiff did not meet this specification, and there was ample competition, this is a legitimate nondiscriminatory reason for the decision made by Defendants.

## VI.  CONCLUSION

Plaintiff's Section 1981 claim is merged into his Section 1983 claim and should be dismissed accordingly. Qualified immunity applies to Defendants because no clearly established law proscribes the actions of Defendants, and Plaintiff has demonstrated no facts showing that the acts taken by Defendants could strip them of qualified immunity. Defendants are entitled to qualified immunity from Plaintiff's Section 1981 claim as a matter of law. The complaint fails to satisfy the Eleventh Circuit's heightened pleading

standard for Section 1983 actions and should be dismissed. Plaintiff's entire complaint should be dismissed because he fails to make out a prima facie case of discrimination.

Plaintiff's complaint is nothing more than a shotgun pleading, which has been condemned by the Eleventh Circuit and is due to be dismissed. Plaintiff fails to allege with any amount of specificity any specific act or any specific intent by Defendants that could strip Defendants of qualified immunity or make out a prima facie case of intentional discrimination. Plaintiff's entire complaint should be dismissed for these reasons.

Respectfully Submitted,

Troy King, Attorney General

/s/ Jeffery H. Long
Jeffery H. Long
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that I have on this the 31st day of July, 2006, electronically filed the foregoing with the Clerk of the Court using CM/ECF system and served a copy of the same by the United States Mail, postage prepaid, and properly addressed as follows:

C&J Associates Pest Control
Curtis Duncan
PO Box 8186
Montgomery, AL 36110

The Clerk using the CM/ECF system will send notification of this filing to:

Harry Lyles, Esq.

/s/ Jeffery H. Long

Counsel Address of Counsel:
Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, AL 36130
(334) 242-7555
jlong@ago.state.al.us