IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| C & J ASSOCIATES PEST CONTROL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 2:05-CV-0557-WHA-DRB |
| | ) | WO |
| RAYBURN HORNSBY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Following due consideration of supporting and opposing submissions on post-discovery motions, the Magistrate Judge concludes that all the defendants are entitled to summary judgment in this 42 U.S.C. § 1983 action filed by *pro se* plaintiffs. Discussion follows a summary of this lawsuit's procedural course and evidentiary facts.

### I.    PROCEDURAL  BACKGROUND

The Complaint filed on June 10, 2005 by Plaintiffs C&J Associates Pest Control ("C&J") and Curtis Duncan ("Duncan") – arises from their unsuccessful bids on State of Alabama contracts for termite treatment projects at the Alabama Department of Transportation ("ADOT") and the Alabama Department of Corrections ("ADOC"). Duncan, a black resident-citizen of Montgomery County, "has performed Pest Control Services for twenty five years and is sole owner of C&J Associates Pest Control." (*Compl.*,¶ 3). Because Plaintiff has represented himself in these proceedings to be the sole proprietor of the plaintiff company, as well as the sole applicant and advocate for the company's interests in the disputed contracts, the court will reference herein the

Plaintiffs in the singular as "Plaintiff" or "Duncan". [1]   The five named defendants are state officials sued individually:  ADOT's Rayburn Hornsby, Office Manager of the First Division ("Hornsby"), Johnny Harris, Division Engineer of the First Division ("Harris"),  and Stan Carlton, Procurement Officer ("Carlton");  Issac Kervin ("Kervin"), Purchasing Agent for the State of Alabama, and his subordinate,  Pat Antle, a Buyer for the State of Alabama.

Plaintiff asserts "race discrimination, violation of the 14th amendment equal protection, and the Civil Rights Act of 1991" as the grounds for damages in Counts One and Two of the Complaint, with the former also specifying a "violation of 42 U.S.C. 1981" and the latter, a "violation of 42 U.S.C. 1983." Count One summarily "alleges that the Defendants actions have violated Plaintiff['s] Federal Constitutional Right of the 14th Amendment to enjoy equal protection of the law and civil rights to be free of race discrimination in state contracting."  In a similarly summary fashion, Count Two "alleges that the Defendants actions have violated Plaintiff['s] 14th Amendment and civil rights under the color of state law." (¶¶ 41, 44).  A third count alleges "Violation of State of Alabama Competitive Bid Laws, ...administrative procedures,  and Board of Examiners' Established Procedures."  As remedial relief, Plaintiff specifies only "costs" and "an order to eliminate all the defendants' bias and discriminatory effects."

Shortly after responding to the complaint with Answers asserting several affirmative defenses,

---

[1]The caption of the Complaint (Doc. 1) designates "C&J Associates Pest Control, CURTIS DUNCAN  - Plaintiff", and Paragraph 3, as follows, provides the only averment regarding the Plaintiffs:

> The named plaintiff is black citizen of the United States and of the State of Alabama and is over the age of nineteen years.  Plaintiff resides in Montgomery County, Alabama.  Plaintiff has performed Pest Control Services for twenty five years and is sole owner of C & J Associates Pest Control.

and prior to any discovery, Defendants Kervin and Antle moved for summary judgment (Doc. 13, Aug. 31, 2005). The District Judge adopted this Magistrate Judge's recommendation to deny the Motion as premature in order to permit discovery on clearly disputed issues of material fact (Recommendation, Doc. 60, Jan 20, 2006; Order, Doc. 68, Feb. 8, 2006). For good cause arising from numerous motions and challenges, the court extended the initial discovery deadline of March 15, 2006, to August 14, 2006.

Defendants Hornsby, Harris, and Carlton timely filed their summary judgment motion on July 31, 2006 (Doc. 74), supported by a brief (Doc. 75) and evidentiary materials (76) and supplemented to adopt by reference their co-defendants' similar motion (Doc. 79). Defendants Kervin and Antle also moved for summary judgment on July 31 (Doc. 77), attaching a brief and evidentiary materials, and also adopting by reference the submissions filed for the ADOT defendants (Doc. 78). Plaintiffs responded to all submissions with a pleading captioned *"Affidavit -Supporting Plaintiffs' Response in Opposition to Defendants' Fraudulent Motion for Summary Judgment and Cross-Motion to Strike Defendant's Motion for Summary Judgment and Affidavits and Cross-Motion Plaintiff's Motion for Summary Judgment* (Doc. 85, Sept. 5, 2006). Citing the procedurally improper format for this submission by Affidavit, Defendants filed *Motions to Strike* (Doc. 86, Sept. 8, 2006 and Doc.87, Sept. 11, 2006).

## II.   PROCEDURAL MOTIONS

Defendants' *Motions to Strike* (Docs. 86 and 87) properly note the pleading irregularities reflected in the *pro se* plaintiff's response to their summary judgment motion:  non-compliance with the "simple, concise, and direct" pleading requirement of Rule 8 and with the Rule 10(b) requirement that averments be numbered and "limited as far as practicable to a statement of a single set of

circumstances"; non-specific references to exhibits attached to documents; reliance on uncertified documents;   the intermixing of testimony and advocacy "in one document in such a manner that no prudent reader can discern what Plaintiff Duncan is swearing to under oath and which statements are advocacy."   Defendants are correct in both their complaints and their note of this court's repeated instructions and direction to the Plaintiff to the Federal Rules of Civil Procedure.   The record is similarly clear that the Plaintiff has consistently resisted this court's instructions pursuant to his declared  belief in his own capabilities as an advocate in subject matters  even trained lawyers are reticent to embrace as lightly. [2]

Notwithstanding the merit of the Defendants' motions to strike, the court will not recommend that drastic remedy, but neither will the court attempt to rewrite the deficient pleading or construe it to be anything other than a rambling, disjointed, repetition of the generally conclusory allegations which have marked all of his pleadings in this lawsuit; as such, the response presents nothing meriting serious consideration. [3]   Thus, the court will proceed to evaluate each summary

---

[2]*See, e.g.,*  (a) Order  specifying requirements for response to summary judgment (Doc. 16, Sept. 2, 2005); (b) Order striking Plaintiff's Report Plan (Doc. 17); (c) Minutes for Sept. 8, 2005 Scheduling Conference; (d) Scheduling Order (Doc. 21); (e) Orders denying Plaintiff's Motions to Quash, to Strike, to Reconsider (Docs. 35, 36, 39); (f) Orders directing Plaintiff's submission to depositions (Docs. 41, 48, 70,73);  (g) Order declining recusal (Doc. 49) ; (h) Minutes for oral argument on January 31, 2006 (Doc. 62).

[3]Plaintiff introduces his 22-page "response in opposition" (Doc. 85) with an introductory paragraph which denounces Defendants' summary judgment submissions as, *inter alia,* "fraudulent...meritless, a sham, pretense and false on its face as well as its content." The middle of page 2 displays the caption, "*Summary of Undisputed Facts*" and continues to the bottom of page 5; the contents, however, consist of  nothing more than argument that the Defendants' submission is meritless followed by Duncan's summary of his and his wife's deposition testimony regarding, *inter alia*, his claim to sole ownership of C&J Associates Pest Control, and concluding with his argument that Defendants had pretextual reasons for not awarding him (instead of Terminix) a contract on June

(continued...)

judgment motion and will consider any relevant response in opposition which is evident and admissible from Plaintiff's pleading.

Aside from its inclusion in the caption, however, the Plaintiff's *Response* (Doc. 85) falls much too woefully short of Rule 56 requirements to be construed as a Cross-Motion for Summary Judgment; nor does it provide any valid grounds for the captioned Cross-Motion to Strike the Defendants' summary judgment motions.   Accordingly, the plead Cross-Motions are due to be denied.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56 (c).   The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of" of the pleadings and evidentiary record "which it believes demonstrate the absence of a genuine issue of material fact."

---

[3](...continued)
11, 2003.  Plaintiff's second caption, *Summary Judgment Standard and Argument*, commences at the bottom of page 5 and continues through page 16; included is Plaintiff's understanding – interspersed with case citations from various jurisdictions –  of the legal standards for (a) the court's evaluation of a summary judgment motion and a Rule 12(b)(6) dismissal motion (pp. 5-8); (b) intentional discrimination (pp.8-9); and (c) state agency immunity,  qualified immunity, and sovereign immunity (pp. 9-11).  Pages 11-14 recount his effort (with defense counsel) to discredit affidavits filed by defendants Kervin and Antle in support of their pre-discovery motion for summary judgment. Plaintiff then argues that the applicable statute of limitations for his claim has not expired (pp.14-16). Page 17 begins under the caption, "Plaintiffs' Allegations-Equal Protection under the 14th Amendment" and both the caption and the content through page 19 appear to be lifted from another litigant's brief; similarly suspect is the next caption and content, "The Plaintiff have [sic] adequately set forth claims under the 14th Amendment." [pp. 19-20].   A summary conclusory sentence ends page 20 and pages 21-22 reflect service certificates.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).    A properly supported motion for summary judgment "requires the non-moving party to go beyond the pleadings and by. . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions of file', "designate 'specific facts showing that there is a genuine issue for trial'." *Id.*; *See* Fed.R.Civ.P. 56(e) and *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (explaining the evidentiary rebuttal required for issues on which the non-moving party would bear the burden of proof at trial).

The court's role is neither to weigh the evidence nor to find the facts; instead, it is "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986).    In doing so, the court must accept the evidence of the non-moving party as true, resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor. *See Hunt v. Cromartie,* 526 U.S. 541, 550-55 (1999).

## IV.   EVIDENTIARY FACTS

To facilitate its duty to construe the evidence from the summary judgment submissions in the most favorable light to the Plaintiff, the court begins with a relevant summary of the allegations in the complaint:

> Plaintiffs attribute to all defendants an "impremissionable (*sic*) preference for favorite (*sic*) a white vendor Cook Pest Control when they wrote bid specifications tailored made for Sentricon distributors in order to make it a sole source product." After receiving on January 16, 2003, a letter from Defendants Hornsby, Harris, Carlot "that Sentricon should be only product accepted for the treatment termites for the First Division", Defendants Kervin and Antle allegedly "rejected the fraudulent actions of Defendants Hornsby, Harris, Carlton [and] advertised Invitation to Bid for Termite

Treatment and Control for the Transportation and Correction Departments through the State Purchasing of Alabama March 13, 2003." (*Compl.*, ¶¶ 11-13). According to Duncan, Defendants Kervin and Antle "willfully and knowingly ignored... because [of] his race" his March 24, 2003 letter protesting "restrictive bid specifications" and proceeded with "the bid specifications recommending Sentricon or any equivalent product ..." and the "bid opening on March 27, 2003." (*Compl.*, ¶¶ 14-16). Though "Defendant Antle on April 17, 2003 awarded Plaintiff the contract to perform the termite treatment for corrections Limestone" (*Compl.*, ¶ 21), Duncan alleges, in essence, that racial bias motivated this defendant and other defendants in connection with the subsequent decisions reversing this award and also rejecting his bid for the Transportation Department's termite project.

(*Recommendation*, Doc. 60 at 2-3, Jan. 20, 2006).

As evident from its summary in n.3, supra, Plaintiff's opposition response provides no basis for elucidating any evidentiary facts. Thus, the court finds the undisputed relevant facts from Defendants' affidavits and evidentiary exhibits.

From Defendant Kervin, the state officer responsible for awarding public contracts pursuant to Chapter 16 of Title 41 of the Code of Alabama, the court ascertains the foundational facts:

On January 29, 2003, State Purchasing received Requisition Number 1264823 for termite treatment sought by the Alabama Department of Transportation (DOT). This requisition was assigned to Pat Antle, buyer. On February 24, 2003, Pat Antle drafted an invitation to bid and send it to DOT for approval prior to sending it to vendors for bidding. The bid number assigned was 03-X-2130153. On March 13, 2003, DOT approved the draft invitation to bid and the final invitation to bid was mailed to vendors on this date. On March 27, 2003, the bids were open publicly and tabulated by data entry. On March 28, 2003, the bid package for 03-X-2130153 was forwarded to DOT for evaluation and award recommendation.

On April 21, 2003, DOT returned the bid package with an evaluation and award recommendation in writing as required . A copy of the agency's recommendation is attached as Exhibit "A". In this recommendation from DOT, Stan Carlton of DOT's procurement bureau rejected the low bid by C&J Associates because the bid did not meet specifications. Stan Carlton rejected the bid by C&J Associates because the Outpost system offered by C&J Associates was not the specified Sentricon system required in the bid, because the primary active ingredient listed in the Outpost system is listed by the EPA for environmental toxicity. The bid was also rejected because C&J Associates failed to provide documentation of the required damage protection

warranty.  On March 29, 2003, Pat Antle, the buyer, awarded the contract to the recommended vendor, Cook's Pest Control but, before mailing the contract to Cook's, Ms. Antle realized that the pricing had been bid incorrectly by Cook's as well as the remaining bidder, Terminix.

On May 19, 2003, Ms. Antle rebid the contract and changed the pricing structure to match industry standards for pricing of this commodity.  At this time, DOT changed the specification to "Sentricon only" and added a specification requiring a "damage replacement guarantee."  This bid was assigned the number of 03-X-2132146.  On May 22, 2003, C&J Associates by and through Mr. Curtis Duncan sent a letter to Pat Antle of the Finance Department asking State Purchasing to award contracts to his company for bids numbered 03-X-213-153, 03-X-2130174 and 03-X-2130175.  This letter is attached as Exhibit "B."  On May 30, 2003, I received a letter from Curtis Duncan of C&J Associates, a copy of which is attached as "Exhibit C," asking State Purchasing to accept other termiticides for DOT respecified bid number 03-X-2132146.  Mr. Duncan requested that the Department of Finance discuss the equivalency of Outpost TBR and Sentricon with two experts at the Department of Agriculture, Dr. Block and Mr. Debreaux.  Pursuant to Mr. Duncan's request, I telephoned Joe Debreaux at (334) 242-7233 of the Department of Agriculture who informed me that Outpost and Sentricon have separate chemical structures.  I also telephoned Dr. John Block at (334) 240-7239 who advised me that in his opinion the Outpost product is better for private home use and Sentricon is better for commercial use.

On June 1, 2003, I and Pat Antle had a conference call with Mr. Walt Weinwurm, a representative of Bayer ES, manufacturer of Outpost TBR.  He informed us that he had discussed this bid with Mr. Duncan and he had advised Mr. Duncan to withdraw his bid because Outpost is not an equivalent to Sentricon.  At this point, Ms. Antle and I decided that we would only accept Sentricon as originally bid.

On June 4, 2003, Mr. Duncan sent a protest letter to State Purchasing, a copy of which is attached as Exhibit "D."  Later that day, Ms. Antle and I met with Mr. Lee Miller, Chief Legal Counsel for the Department of Finance to discuss Mr. Duncan's protest.  Mr. Miller advised that the State was adhering to State purchasing Laws as required by asking for Sentricon as the only acceptable product because the agency had successfully justified the use of Sentricon as the only viable product for their application, and there were multiple vendors who can offer this product, thus meeting the competitive bid laws.

On June 5, 2003, bid number 03-X-2132146 is opened publicly.  C& J Associates submitted a "NO BID," a copy of which is attached as Exhibit "E."  On June 6, 2003, the bid package was sent to DOT for evaluation and recommendation.  On June 11, 2003, the bid package is returned by DOT with an evaluation and recommendation

in writing as required. It was recommended that the contract be awarded to Terminix of Huntsville, the low bidder. On June 12, 2003, the contract for DOT, bid number 03-X-2132146, is awarded to Terminix.

On June 13, 2003, I answered the protest of Mr. Curtis Duncan of C&J Associates and a copy of that answer is attached as Exhibit "F."

(Kervin *aff.,* Ex. 1, Doc. 77-2 and duly certified *Exs.* A-F); *see also* Supplemental Kervin *aff.*, Ex. 3,

Doc.77-4;  Antle *aff.*, Ex. 2, Doc. 77-3; C. Duncan Dep. 6, 19-25, 29-33, 46-47, 134-136; 144-160,

217, April 11, 2006, Ex. 4.

The chronology described by Defendant Kerwin related specifically to ADOT's bid process for the termite treatment contract in controversy.  The bid process for disputed contracts with the ADOC  for termite treatment at its Limestone Facility – occurred concurrently, as documented by Defendant Kerwin in his affidavit filed August 31, 2005 (Doc. 13-2) and expressly adopted as part of the summary judgment record (Doc. 75 at 1).  Because Plaintiff's response in opposition fails to dispute its material averments, Defendant Kerwin's relevant affidavit describing the ADOC bid process is reproduced verbatim, except for the chronology for the June 1-13, 2003 period, which is materially the same as that indicated for the ADOT contracts:

On February 20, 2003, State Purchasing initialized Requisition Number 1268367 for termite treatment at the Alabama Department of Corrections - Limestone Facility (DOC).  State Purchasing attached the Requisition to solicitation Number 03-X-2130174.  On March 13, 2003, the solicitation was set for final draft.  On March 14, 2003, invitations to bid were sent to the State Mailroom for mailing to registered vendors.  On March 27, 2003, invitations to bid were opened publicly and tabulated. On March 28, 2003, bids for 03-X-2130174 were forwarded to DOC for evaluation and award recommendation.  On April 15, 2003, DOC returned bid package to State Purchasing with award recommendation.  A copy of the agency's recommendation is attached as Exhibit "G."

On April 17, 2003, a contract was awarded to the low bidder, C&J Associates as recommended by the DOC.  During this time frame Stan Carlton, of the Alabama Department of Transportation (DOT), called and informed me that C&J Associates,

low bidder on DOT termite treatment bid number 03-X-2130153, did not meet the specifications for that bid. Since the DOT bid contained the same specifications as the DOC bid, I felt I could not officially award that contract until DOT returned their bid package with written justification that showed C&J Associates' product did not meet the bid specifications. On April 21, 2003, DOT sent their bid package, 03-X-2130153, to State Purchasing with documentation showing C&J Associates' produce bid did not meet the specifications of their bid, which were the same as the specifications bid for the DOC contract.

On April 25, 2003, Pat Antle, the buyer, sent bid package 03-X-2130174 back to DOC to re-evaluate the bid package, since the bid specifications were identical to those of the DOT. A copy of the letter is attached as Exhibit "H." On May 22, 2003, DOC sent the bid package back to State Purchasing with a letter of award recommendation. A copy of the letter is attached as Exhibit "I." On May 22, 2003, I received a letter from C&J Associates by and through Mr. Curtis Duncan asking State Purchasing to award contracts to his company for bids numbered 03-X-2130153, 03-X-2130174 and 03-X-2130175. This letter is attached as Exhibit "B." On or about May 30, 2003, I received a letter from Curtis Duncan of C&J Associates, a copy of which is attached as "Exhibit C," requesting State Purchasing discuss the equivalency of Outpost and Sentricon with two experts at the Alabama Department of Agriculture, Dr. Block and Mr. Debreaux. I subsequently telephoned Joe Debreaux of the Department of Agriculture, at (334) 242-7233, who informed me that Outpost and Sentricon have separate chemical structures. I also telephoned Dr. Block at (334) 240-7239 who advised me that in his opinion the Outpost product is better for private home use while Sentricon is better for commercial use.

## V.    DISCUSSION

### A.    Overview: claims and defenses

All defendants have plead affirmatively these defenses: the statute of limitations, qualified immunity, "advice of attorney", and "Plaintiffs' lack [of] standing as non-bidders to contest the awarding of contracts on which they did not bid." (Docs. 9 and 10). ALDOT Defendants Hornsby, Harris, and Carlton also challenge Duncan's standing to continue the *pro se* representation of C&J Associates and join Defendants Kervin and Antle in challenging the sufficiency of the asserted Section 1983 claim. With respect to the alleged state law claims, the ALDOT defendants contend

10

that no claim is stated under state law and in any event, they claim state agency immunity.

All the defendant state officers maintain correctly that Plaintiff cannot maintain his race discrimination claim against them under 42 U.S.C. §1981 (Count One). "The express cause of action for damages created by Section 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in Section 1981 by state governmental units." *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989); *see Butts v. County of Volusia*, 222 F.3d 891, 893-894 (11th Cir. 2000) (concluding that the Civil Rights Act of 1991 did not amend Section 1981 to create a cause of action against state actors and "§ 1983 contains the sole cause of action against state actors for violations of § 1981"); *Godby v. Montgomery County Board of Education*, 996 F.Supp. 1390, 1411 (M.D. Ala. 1998). Accordingly, the court analyzes only the federal claim in Count Two, asserted in only general terms as follows: "This count is brought for damages and other relief under 42 U.S.C. 1983 for the acts of the Defendants which were carried out while they was [sic] acting under the color of state law and in violation of Plaintiff [sic] 14th Amendment of the United States Constitution and civil rights."

Three factors combine to doom Plaintiff's federal claim against all the state defendants: his wholly conclusory pleading of defendants' alleged racial discrimination,[4] his failure to demonstrate

---

[4] When governmental officers sued individually assert qualified immunity, as all the defendants have in this case, controlling Eleventh Circuit precedent imposes a "heightened pleading" standard for the complaint instead of Rule 8's minimal notice pleading. *See GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367-68 (11th Cir. 1998) ("We stress at this point, . . . that the heightened pleading requirement is the law of this circuit. . . . Although the Supreme Court has held that courts may not impose a heightened pleading requirement in § 1983 cases involving municipalities, *see Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit,* 507 U.S. 163, 167-68, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993), the Court specifically declined to extend its holding to cases involving individual government officials, *see id.* at 167, 113 S.Ct. at (continued...)

any evidence of defendants' racially discriminatory intent,   and his otherwise woefully deficient response in opposition to summary judgment submissions which are well-grounded on evidentiary exhibits.  Accordingly, no protracted discussion is warranted on the substantive claims and defenses.

**B.**    **Legal Standards: Equal Protection Claim**

To vindicate under Section 1983 the Fourteenth Amendment's  mandate that "[n]o state...deny to any person within its jurisdiction the equal protection of the laws," U.S. CONST. amend XIV, § 3, the plaintiff must allege the deprivation of a  substantive or procedural right which is federally secured.  Because Section 1983 is purely a remedial statute,[5] if Duncan utilizes it as the jurisdictional basis for a  constitutional cause of action, the action must be  grounded on some otherwise defined federal right to equal protection of the laws.  Equal protection principles require generally that government officials behave in a way such  "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Thus, in order to establish a claim cognizable under the Equal Protection Clause, a plaintiff must allege that he was similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on race, as Duncan asserts here, or some other constitutionally

---

[4](...continued)
1162, and we likewise decline to do so here.");  *See  Wash v. Bauer*, 149 Fed. Appx. 867, at*870 (11th Cir. 2005)("[T]here is a heightened pleading requirement when a plaintiff brings a §1983 complaint against officials acting in their individual capacities.")*;  Swanson v. Pitt*, 330 F. Supp. 2d 1269, 1281 n. 31 (M.D.Ala. 2004) (recognizing that the Eleventh Circuit employs heightened pleading standards for §1983 claims against state officials in their individual capacities).

[5]*See Graham v. Connor*, 490 U.S. 386, 393-94 (1989) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred").

protected interest. *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001).   Moreover, as the Court emphasized in *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted):

> Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.  Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.

*see also Hernandez v. New York*, 500 U.S. 352, 359 (1991);  *E & T Realty Co. v. Strickland,* 830 F.2d 1107 (11th Cir. 1987).  Evidence which merely indicates disparity of treatment or erroneous or even arbitrary administration of state powers, rather than against instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent.  *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

### C.    "Qualified Immunity" Standards

Qualified immunity offers "complete protection for government officials sued in their individual capacities if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  As explained by the court in *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002):

> [t]he purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing  litigation, *see Anderson v. Creighton*, 483 U.S. 635, 638, [ ], protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.  *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001).

An officer asserting qualified immunity "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1998)). Assuming the officer's requisite showing for his discretionary authority, the burden shifts to the Section 1983 plaintiff to demonstrate the impropriety of qualified immunity. The court's evaluation must be guided by the two-pronged test required by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001):

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?...[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry...must be undertaken in light of the specific context of the case, not as a broad general proposition.

The governing law is clearly established if the "'preexisting law dictates, that is, truly compel[s], ' the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances." *Marsh v. Butler County*, 268 F.3d 1014, 1031 (11th Cir. 2001) (*en banc*) (citations omitted). Plaintiff must establish that at the time of the challenged conduct the law then gave the defendant "fair warning" of the unconstitutionality of his alleged conduct. *Willingham v. Loughnan*, 321 F. 3d 1299, 1301 (11th Cir. 2003).

**D.     Defendants Kervin and Antle**

The court finds on the summary judgment record that the challenged actions and decisions by Defendants Kervin and Antle fell within their discretionary authority. Plaintiff makes no credible

14

showing otherwise for these or for the ALDOT defendants.[6]

Defendant Antle, indisputably a subordinate employee, has submitted her sworn declaration that she "lack[ed] the legal capacity to award any contracts publicly bid, as the ultimate decision belong[ed] to Mr. Kervin." (Ex.2, Doc. 77-3). The affidavit is uncontradicted on this record. The complaint patently fails to satisfy the "heightened pleading" requirements for any constitutional claim against this defendant, and some of its averments arguably disassociate Antle and her supervisor from some of the wrongdoing alleged.[7] While the complaint does attribute to Antle and Kervin a racial animus, albeit totally in conclusory and gratuitous references[8], in response to these defendants'

_____

[6]Obviously not grasping the fine contours of the distinct immunities asserted, Plaintiff asserts in this complaint:

> The Defendants collectively was [sic] not performing discretionary functions within their official capacity, but were acting under the color of law in their individual capacity outside the scope of their jobs and ministerial functions. Plaintiff is not suing Defendants in their official capacity, but in their individual capacity. The Defendants waived their sovereign and qualified immunity when they willingly and knowingly discriminated against Plaintiff because of his race in their individual capacity. The Defendants are liable for the damages they caused Plaintiff because they chose not to perform their ministerial duties within their scope of their official capacity. The immunity defense shall fail for the Defendants since a reasonable competent official should know the law governing his conduct.

(*Compl.*at 9).

[7]*See, e.g.*, ¶ 12 ("Defendants Kervin, Antle rejected the fraudulent actions of Defendants Hornsby, Harris, Carlton of trying to make Sentricon a sole source product.")

[8]*See* ¶ 14 ("Plaintiff wrote a letter on March 24, 2003 concerning this matter to Defendants Kervin, Antle willfully and knowingly ignored Plaintiff protest because his race."); ¶ 18 ("Plaintiff submitted on April 7, 2003 information and the label about Outpost by fax to Defendants Antle, Hornsby which they willingly and knowing chose to fraudulently ignore because of their racial basis for Plaintiff."); ¶ 27 ("Plaintiff race was the only motivating factor used by the Defendants to make this improper decision."); ¶ 28 ("Defendants Kervin, Antle willfully and knowingly decided to discriminate against Plaintiff because of his race and violated the Competitive Bid Law.") ¶ 29
(continued...)

specific denials and their evidentiary showing for the non-racial character of the process and their decisions,[9] Plaintiff Duncan has failed to demonstrate any evidence of the discriminatory intent which is a necessary element of his race-based equal protection claim;[10] he cannot establish, therefore, that these defendants violated his constitutionally secured right to equal protection.  His bald-faced allegations alone of racial bias and discrimination are clearly insufficient.[11]  Because he fails to establish any conduct by these defendants which violated his clearly established constitutional or statutory rights, they are entitled to qualified immunity on the asserted claims.

Plaintiff's state law claim in Count Three merits similar short shrift as it is premised wholly on unsupported allegations that all the defendants acted in "violation of State of Alabama Competitive Bid Laws 41-16-50, 41-16-63, State of Alabama Administrative Procedures, and Board of Examiners' Established Procedures."  As the record attests, in deference to the Plaintiff's status as a non-lawyer, *pro se* litigant, the court repeatedly advised of his duty to establish his asserted claims

---

[8](...continued)
("Defendants Kervin, Antle because of their racial basis for Plaintiff fraudulently influenced ..."); *see also* ¶¶ 31-37.

[9]*See, e.g.*, Kervin *aff.*, at 4 ("In no way was race a factor in determining to whom the bid was awarded.  The specifications were set out by DOT and the Alabama bid laws were followed.") and the evidentiary exhibits along with Kerwin's Supplemental *aff.* and evidentiary exhibits (Doc. 77-4).

[10]*See Washington v. Davis*, 426 U.S. 229, 239-45 (1976); *Mercer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir. 1998) ("A government actor ... cannot violate a Plaintiff's equal protection rights unless the Defendant has the intent to discriminate.")

[11]*See McDaniel v. Woodard*, 886 F. 2d 311, 314 (11th Cir. 1989) ("For purposes of qualified immunity, the Plaintiff must do more than simply make general, conclusory allegations of some constitutional violation or state broad legal truisms, generalities are just not helpful.") (internal citations omitted).

16

by evidence consistent with governing law.  Challenged by defendants' summary judgment motion[12],

Plaintiff cannot merely rest on the general claims stated in his Complaint but, instead, must

demonstrate how each named defendant acted, or failed to act, in violation of the specified bid laws

or any applicable administrative procedures.  Indisputably, he has not done so.

### E.     ADOT Defendants Hornsby, Harris, and Carlton

Pursuant to the same failures and deficiencies enumerated in the context of the claims against

Defendants Kervin and Antle, Plaintiff has failed altogether to demonstrate against the ADOT

defendants any racial discrimination claim violative of the Fourteenth Amendment and any valid

state law claim premised on Alabama bid laws or administrative procedures.  Little additional

discussion is merited on this record.

The purported equal protection claim against Defendants Hornsby, Harris, and Carlton –

assuming *arguendo* it survives the statute of limitations and standing defenses [13] – fails indisputably

---

[12]Defendants Kervin and Antle demonstrate their compliance with the cited bid laws, showing, *inter alia*, that Ala. Code 41-16-57 (b)(1975) does not proscribe Defendant Antle's bid specification for only one product, and that Ala. Code 41-16-75 dictates that competitive bidding "be made to the lowest responsible bidder taking into consideration the qualities of the commodities proposed to be supplied, *their conformity with specifications*, the purposes for which required, the terms of delivery, transportation charges, and the dates of delivery." (*Defs.' Br.*, Doc. 77-1 at 11-12, emphasis included).

[13]While the court declines to decide these defenses – given the summary judgment clearly warranted for Plaintiff's failure to demonstrate the discriminatory intent necessary to sustain the federal equal protection claim – it bears noting that the ALDOT defendants have submitted persuasive evidence which casts doubt on Plaintiff Duncan's standing to assert any claim for C&J Associates Pest Control which is separate and distinct from his asserted claim, doing business in that name. (See Doc. 75 at 3-5 and referenced exhibits).  Because he has litigated this action without distinguishing his interest from the company's interest, the court is reticent to preserve any right for the company

(continued...)

for lack of evidence of intentional discrimination. Plaintiff has made no showing that would deprive these Defendants of qualified immunity.

———

## VI.   CONCLUSION

Pursuant to the findings and conclusions stated, it is the Recommendation of the Magistrate Judge that:

1.   the *Motion to Strike* filed by Defendants Kervin and Antle (*Doc. 86*), and the *Motion to Strike* filed by Defendants Harris, Hornsby, and Carlton (*Doc. 87*) each be DENIED;

2.   the *Motion for Summary Judgment* filed by Defendants Harris, Hornsby, and Carlton (*Doc. 74*, as supplemented by Doc. 79) be GRANTED;

3.   the *Motion for Summary Judgment* filed by Defendants Kervin and Antle (*Doc. 77, as supplemented by Doc. 78*) be GRANTED;

4.   the *Cross-Motion to Strike Defendants' Motion for Summary Judgment*, plead by Plaintiff in *Doc. 85*, be DENIED;

5.   the *Cross-Motion for Summary Judgment*, plead by Plaintiff in *Doc. 85*, be DENIED; and

6.   Final Judgment be entered against the named Plaintiffs – C & J Associates Pest Control and Curtis Duncan – and in favor of the named Defendants: Rayburn Hornsby, Johnny Harris, Stan Carlton, Issac Kervin, and Pat Antle.

It is further **ORDERED** *that the parties shall file any objections to the said Recommendation*

---

[13](...continued)
to reassert claims which clearly cannot be maintained.

*not later than December 19, 2006*. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE THIS 6th day of December, 2006.

/s/ **Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE

19